1

## EXHIBIT 1

2

## DEFINITIONS

3        1.     The terms "you," "your," or "Gu Trust" means Leo Gu, as Trustee of the Gu Family

4  Trust, as well as any persons or entities acting on the Gu Trust's behalf or under its direction or control,

5  including, without limitation, its agents, representatives, employees, consultants, attorneys, predecessors,

6  successors, assigns, officers, directors, affiliates, partners, subsidiaries, parent corporations, and

7  investors.

8        2.     The term "Tutor Group Holding" means Tutor Group Holding Inc. and any parent,

9  subsidiary, or sibling entities, and if context so requires, shall include Tutor Group Holding's agents,

10  employees, or representatives.

11        3.     The term "MEJ" means MEJ Investments Ltd. and any parent, subsidiary, or sibling

12  entities, and if context so requires, shall include VistaJet's agents, employees, or representatives.

13        4.     The term "Ping An" means Ping An Insurance (Group) Company of China, Ltd. and any

14  parent, subsidiary, or sibling entities, and if context so requires, shall include Ping An's agents,

15  employees, or representatives.

16        5.     The term "VistaJet" means the company operating in China under the trading name

17  VistaJet, including VJCN (Beijing) Aviation Consulting Co., Ltd., and any parent, subsidiary, or sibling

18  entities, and if context so requires, shall include VistaJet's agents, employees, or representatives.

19        6.     The term "Eric" means Chengta "Eric" Yang, as well as any persons or entities acting on

20  Eric's behalf or under his direction or control, including, without limitation, his agents, representatives,

21  employees, consultants, and attorneys.

22        7.     The term "Rocky" means Rocky Lee, as well as any persons or entities acting on Rocky's

23  behalf or under his direction or control, including, without limitation, his agents, representatives,

24  employees, consultants, and attorneys.

25        8.     The terms "document" or "documents" shall have the broadest definition possible, and

26  shall include, but not limited to, any kind of written or graphic material, however produced or

27  reproduced, of any kind or description, whether sent or received or neither, including originals, copies,

28  drafts and both sides thereof, and including, but not limited to: any paper, report, binder, cover note,

certificate, letter, correspondence, record, table, chart, analysis, graph, schedule, report, test, study memorandum, note, list, diary, log, calendar, telex, message (including, but not limited to, inter-office and intra-office communications), questionnaire, bill, purchase order, blog, chart, data file, log file of computer access activity, shipping order, contract, memorandum of contract, agreement, assignment, license, permit, ledger, ledger entry, book of account, check, order, invoice, receipt, statement, financial data, acknowledgement, computer or data processing card, computer or data processing disk, computer-generated matter, photograph, photographic negative, phonograph recording, transcript or log of recording, projection, videotape, film, microfiche, and any other data compilation from which information can be obtained or translated, report and/or summary of investigations, draft and revision of drafts of any documents and original preliminary notes or sketches, and any record kept by electronic, photographic, optical, mechanical, magnetic means and things similar to any of the foregoing, including computer media, regardless of their author, no matter how produced or maintained, in your actual or constructive possession, custody or control, or the existence of which you have knowledge, and whether prepared, published or released by you or by any other person. If a document has been prepared in several copies, or additional copies have been made, or copies are not identical (or which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy is a separate document.

9.     The terms "communication" or "communications" means any manner or means of disclosure, transfer or exchange of information with any person (whether internal or external to an organization), including but not limited to by means of verbal conversation, letter, memoranda, message, note, telegram, telex, electronic mail, facsimile, text message, chat message, instant message, Facebook message or Twitter message, posting, or by any other document.

10.    The term "relating to" means embodying, referring to, relating to, summarizing, constituting, containing, analyzing, studying, explaining, mentioning, showing, discussing, supporting, refuting, reflecting, memorializing, describing, commenting upon, and/or connected in any way factually or logically with, the matter therein.

11.    As used herein, the masculine includes the feminine and neuter; the singular includes the plural; "each" includes and encompasses "every," and vice-versa; "any" includes and encompasses

1 | all, and vice-versa; the terms "and" and "or" have both conjunctive and disjunctive meanings so as to
2 | be inclusive of any documents.

3 |     12.      References to the singular include the plural.

4 |     13.      The use of any tense of any verb includes all other tenses of the verb.

5 | **INSTRUCTIONS**

6 |     1.      This is a continuing request for production of documents.  If, after making your initial
7 | productions, you obtain or become aware of any further documents responsive to this subpoena, you
8 | must produce such additional documents.

9 |     2.      Pursuant to applicable rules of civil procedure, you are required to obtain and furnish all
10 | information available to you or in your control or available or in the control of any of your
11 | representatives, employees, agents, brokers, servants, or attorneys.

12 |     3.      Each request shall be construed independently and responded to separately.

13 |     4.      If any document or request for information or definition or instruction is objected to in
14 | whole or in part, specify all grounds on which objection rests. Respond to all portions of each such
15 | request to which no objection is asserted. In addition, state whether any responsive information has been
16 | omitted from any response or whether and in what way the search for responsive information has been
17 | delimited or circumscribed on the basis of any such objection.

18 |     5.      The documents produced in response to this request shall include all attachments and
19 | enclosures.

20 |     6.      If you believe that any of the requests calls for an assertion of a claim of privilege, answer
21 | so much of the request as is not objected to, state that part of each request to which you raise objection
22 | and set forth the basis for your claim of privilege with respect to such information you refuse to give.

23 |     7.      If, for reasons other than a claim of privilege, you refuse to answer any request, please
24 | state the grounds upon which the refusal is based with sufficient specificity to permit determination of
25 | the propriety of such refusal.

26 |     8.      Each request calls for the production of the original document. Each request also includes
27 | a request for production of all preliminary drafts of documents that differ in any respect from the original
28 | or final draft or from each other (e.g., by reason of handwritten notes or comments added to one copy

1  of a document).

2      9.     If any documents requested have been lost or destroyed, the documents lost or destroyed

3  must be identified by author, date and subject matter.

4      10.    For any document which was once in your control, but is no longer, please indicate the

5  date the document ceased to be in your control, the manner in which it is ceased, and the name and

6  address of its present custodian.

7      11.    If you do not agree with any definition of the terms provided herein, you are instructed

8  to provide a reasonable, alternative definition for that term, consistent with industry custom and usage.

9      12.    Each of the definitions and instructions contained herein shall be fully applicable to each

10 request notwithstanding that a definition or instruction may, in whole or in part, be reiterated in a

11 particular request and notwithstanding that a particular request may incorporate supplemental

12 instructions or definitions.

13     13.    Unless otherwise indicated, each request is to be construed as encompassing all

14 documents from the date the document (or thing) was first created, generated or received and continues

15 to the date of production.

16     14.    If any document or request is deemed to call for the disclosure of confidential or

17 proprietary information, such documents or information may be produced pursuant to the protective

18 order in this litigation.

19                          **REQUESTS FOR PRODUCTION**

20 **REQUEST FOR PRODUCTION NO. 1:**

21     All documents and communications between you and Tutor Group Holding, Eric, or Rocky

22 relating to any investment by Ping An in Tutor Group Holding from May 2017 to present.

23 **REQUEST FOR PRODUCTION NO. 2:**

24     All documents reflecting the final terms of any investment by Ping An in Tutor Group Holding,

25 including term sheets, memoranda of association, articles of association, shareholder agreements, and

26 contracts or agreements.

27 **REQUEST FOR PRODUCTION NO. 3:**

28     All documents and communications between you and Tutor Group Holding, Eric, or Rocky

relating to Tutor Group Holding's Series D financing from May 2017 to present.

**REQUEST FOR PRODUCTION NO. 4:**

All documents reflecting the final terms of Tutor Group Holding's Series D financing, including term sheets, memoranda of association, articles of association, shareholder agreements, and contracts or agreements.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications between you and Tutor Group Holding, Eric, or Rocky relating to any sale or transfer of shares of Tutor Group Holding held by MEJ from May 2017 to present.

**REQUEST FOR PRODUCTION NO. 6:**

All documents reflecting the final terms of any sale or transfer of shares of Tutor Group Holding held by MEJ from May 2017 to present, including term sheets, memoranda of association, articles of association, shareholder agreements, and contracts or agreements.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and communications between you and Tutor Group Holding, Eric, or Rocky concerning the termination of Ming Yang's employment and board position at Tutor Group Holding, including documents and communications relating to any legal action brought or threatened to be brought by Ming Yang against Tutor Group Holding, Eric, Rocky, or MEJ.

**REQUEST FOR PRODUCTION NO. 8:**

All minutes for any Tutor Group Holding board meeting in which any legal action brought or threatened to be brought by Ming Yang against Tutor Group Holding, Eric, Rocky, or MEJ was discussed.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and communications between you and Tutor Group Holding, Eric, or Rocky concerning VistaJet and any investigation into or settlement of any contract entered into between VistaJet and Tutor Group Holding.